UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KRYSTA K.,

Plaintiff,

v.

FRANK BISIGNANO,[1] Commissioner of Social Security,

Defendant.

---

**DECISION and ORDER**

**24-CV-614-LGF**
(**consent**)

APPEARANCES:

FREDERICK LAW OFFICES, PLLC
Attorneys for Plaintiff
SARAH A. FREDERICK, of Counsel
4467 South Buffalo Street
Orchard Park, New York 14127

MICHAEL DiGIACOMO
UNITED STATES ATTORNEY
Attorney for Defendant
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202
and
MORRIS LINDSEY WILLIAMS
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of Program Litigation
OFFICE 2
6401 Security Boulevard
Baltimore, Maryland 21235

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On April 3, 2026, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 29). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on March 3, 2025 (Dkt. 13), and by Defendant on April 30, 2025 (Dkt. 19).

## BACKGROUND

Plaintiff Krysta K. ("Plaintiff"), brings this action under Titles II and Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on March 31, 2021, for Social Security Disability Insurance Benefits ("DIB") under Title II of the Act, and on June 22, 2021, for Supplemental Security Income ("SSI") under Title XVI of the Act (together, "disability benefits"). AR[2] at 295-96. Plaintiff alleges she became disabled on August 26, 2020, based on alcoholism, short term memory problems, alcohol neuropathy, depression, bipolar disorder, addiction disorder, anxiety, and seizures. AR at 328. Plaintiff's applications initially were denied on November 22, 2021, AR at 130, 131, and upon reconsideration on March 2, 2022. AR at 168, 169.

Plaintiff timely filed a request for an administrative hearing ("hearing"), AR at 245, which was granted with the hearing held via teleconference on February 10, 2023

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on August 29, 2024 (Dkt. 6).

before Administrative Law Judge ("ALJ") Anna Wright ("the ALJ"), in Buffalo, New York. AR at 49-95. Appearing and testifying at the hearing by telephone were Plaintiff, represented by Sara Ann Frederick, Esq., with impartial vocational expert ("VE") Rocco J. Meola also appearing and testifying by telephone. On July 26, 2023, the ALJ issued a decision denying Plaintiff's claims, AR at 8-24 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 289. On April 26, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision, rendering it the Commissioner's final decision. AR at 1-7. On July 1, 2024, Plaintiff commenced this action seeking review of the ALJ's decision denying Plaintiff disability benefits.

On March 3, 2025, Plaintiff moved for judgment on the pleadings (Dkt. 13) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13-1) ("Plaintiff's Memorandum"). On April 30, 2025, Defendant moved for judgment on the pleadings (Dkt. 19) ("Defendant's Motion"), attaching the Commissioner's Memorandum in Support of His Cross Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 19-1) ("Defendant's Memorandum"). Filed on July 22, 2025, was Plaintiff's Reply (Dkt. 28) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion should be DENIED; Defendant's Motion should be GRANTED.

**FACTS**[3]

Plaintiff Krysta K. ("Plaintiff"), born March 23, 1993, was 27 years old as of her alleged disability onset date ("DOD") of August 26, 2020, and 30 years old as of July 26, 2023, the date of the ALJ's decision. AR at 19, 292, 295. Plaintiff lives in a house with her family including her parents and her daughter,[4] AR at 76, 77-78, 352, 949, 956, graduated from high school where she attended regular classes, AR at 60, 329, and also completed training as a certified nursing assistant. AR at 61, 329. Plaintiff does not drive but depends on others for rides and cannot go out alone because she needs assistance with walking. AR 355-56. Plaintiff's driver's license was suspended following an automobile accident in which Plaintiff was driving while intoxicated. AR at 950. Plaintiff does not need any help with self-care or grooming, cares for her minor child with some help from her mother, prepares meal for her family, and does laundry, watches television, picks up the house, and socializes with others including going to the movies and engaging in social gatherings on a weekly basis. AR 353-56. Plaintiff's past work includes as an attendant in an arcade, a certified nursing assistant in a nursing home, a home health aide for a home care agency, a cashier in a retail establishment, in food prep at a grocery store, and as a night auditor in a hotel, AR at 312, but Plaintiff ceased working on August 26, 2020 because of her alleged disabling condition. AR at 295.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

[4] Plaintiff's parents have custody of Plaintiff's daughter because of Plaintiff's history of alcohol abuse. AR at 667.

Beginning in 2016, Plaintiff also occasionally performed work on the computer for her father's paving company but ceased performing that work in August 2020.[5] AR at 62.

It is undisputed that Plaintiff has a history of alcohol abuse which she described on September 27, 2020 as drinking two cans of Four Loko[6] and a half bottle of rum per day. AR at 1098. According to Plaintiff, when she attempts to discontinue consuming alcohol, Plaintiff develops a sensation of pins and needles in her legs which progressed to weakness in her lower extremities causing her to fall. AR at 1098. On September 11, 2019, Plaintiff fell down the stairs ("the fall") but did not seek treatment for any injuries from the fall until September 16, 2019, when Plaintiff presented to the emergency department of Kenmore Mercy Hospital ("Kenmore Mercy") complaining of a progressively worsening headache, dizziness, and a bruised tailbone. AR at 439.

On July 1, 2020, Plaintiff was involved in a motor vehicle accident ("the accident") which caused her to lose consciousness, and sustained knee and neck pain. AR at 476, 489. Plaintiff initially did not seek medical treatment for her injuries from the accident, but on July 6, 2020, Plaintiff presented to Kenmore Mercy's emergency department for treatment. AR at 476. Diagnostic imaging tests of Plaintiff's right knee, right tibia and fibula, and right ankle, as well as a chest X-ray were normal. AR at 481-83, 485, and CT of Plaintiff's cervical spine showed no fracture or subluxation but possible spasm. *Id*. at 484-85.

---

[5] In September 2020, Plaintiff attempted to return to working for her father but Plaintiff maintains her impairments rendered Plaintiff unable to perform the work. AR at 63.

[6] Four Loko is a malt beverage containing between 8% and 14 % ABV (alcohol by volume), roughly the equivalent of 4 to 8 shots of standard 80 proof liquor, and sold in 23.5 oz cans. *See* fourloko.com, *last visited* September 1, 2026.

From August 27, 2020, to September 21, 2020, Plaintiff was hospitalized at Kenmore Mercy for complaints of severe bilateral leg weakness and numbness in her feet with muscle wasting in the lower extremities and poor musculature observed throughout. AR at 517, 521, 525, 592. Despite multiple diagnostic tests, including MRI of the lumbar spine that revealed a small central disc protrusions at L4-L5 and L5-S1, with mild spinal canal narrowing at L4-L5, but without any neuroforaminal stenosis at either L4-L5 or L5-S1, but no structural abnormality within the brain, thoracic and lumbar spines explaining Plaintiff's symptoms. AR at 519. With no specific cause of Plaintiff's lower extremity weakness and numbness identified, Plaintiff's diagnoses upon discharge on September 21, 2020, included bilateral lower extremity weakness and paresthesia (sensation of pins and needles), alcoholic polyneuropathy, abnormal liver function tests attributed to drinking alcohol, bipolar disorder, and mixed anxiety and depressive disorder. AR at 521. Plaintiff was discharged from Kenmore Mercy to Williamsville Elderwood subacute rehab for further therapy, however, she left against medical advice ("AMA"), before Plaintiff's case presentation, and returned home to drink. AR at 720, 1298.

On September 27, 2020, Plaintiff presented to the Emergency Department ("ED") of Erie County Medical Center ("ECMC") in Buffalo, New York with complaints of an inability to ambulate because of pain and the sensation of pins and needles in her feet, and seeking treatment for alcohol withdrawal and detoxification. AR at 720. Plaintiff was admitted to ECMC from September 27, 2020 until October 8, 2020 for alcohol withdrawal and detoxification. AR at 720, 736. At that time, Plaintiff estimated she was drinking a liter of rum every day. *Id*. Upon her discharge on October 8, 2020, Plaintiff

was to transfer to another rehabilitation facility but instead returned home where she consumed alcohol. AR at 736. Later on October 8, 2020, Plaintiff's boyfriend placed an emergency 911 call reporting Plaintiff was unable to walk and Plaintiff was brought by ambulance to ECMC's emergency department where Plaintiff complained of weakness and an inability to walk. *Id*. On October 9, 2020, Plaintiff was admitted to ECMC with diagnoses of acute alcohol intoxication, bilateral lower extremity weakness, and history of a conversion disorder.[7] *Id*. at 741. During her hospitalization at ECMC, Plaintiff was educated with regard to conversion disorder and how the disorder was the likely cause of Plaintiff's lower extremity weakness. *Id*. at 745. Upon accepting the conversion disorder diagnosis, Plaintiff "improved markedly in regards to her ability to attempt weight bearing with her entire body weight," could transfer from a bed to a wheelchair using a sliding board, and her "overall future attitude towards life" improved. *Id*.

On November 5, 2020, Plaintiff was discharged from ECMC to Terrace View ("Terrace View"), a subacute rehabilitation facility operated by ECMC with the anticipation that Plaintiff would full regain her ability to walk and to achieve personal and career goals. AR at 743, 745, 1224. Plaintiff was an inpatient at Terrace View until December 18, 2020. AR at 692, 702. While at Terrace View, Plaintiff received regular physical therapy, made adequate progress with her lower extremity weakness, and was able to ambulate with a walker upon discharge on December 18, 2020. AR at 1298.

Since 2018, Plaintiff received mental health treatment from BestSelf Behavioral Health ("BestSelf") including counseling and medication management. AR at 331-32,

[7] According to evidence provided to the Commissioner by Plaintiff, a conversion disorder is "a mental health disorder that causes physical symptoms." AR at 32.

799-939, 1313-1569. In connection with her disability benefits application, on October 16, 2021, Plaintiff underwent an internal medicine examination by consultative physician Susan Dantoni, M.D. ("Dr. Dantoni"), who observed Plaintiff walked with an antalgic gait, lifting her right foot "as if she has a right foot drop, but she does not have a right foot drop . . . ." Plaintiff could not walk on heels and toes, and squat was 50% of normal, but Plaintiff used no assistive device, stance was normal, Plaintiff needed no help changing for the examination or getting on and off the exam table, was able to rise from a chair without difficulty, and Plaintiff's cooperation and effort with the exam were good. AR at 956. The rest of the examination was within normal limits and Dr. Dantoni diagnosed Plaintiff with a history of a fall with head injury, history of difficulty walking, memory lapse, and history of alcoholism, and assessed Plaintiff's prognosis as "fair." *Id*. at 958. Dr. Dantoni opined that Plaintiff "has moderate to marked limitations for prolonged standing, prolonged walking, and climbing stairs due to her dyscoordination of her feet and her strange gait." *Id*. Dr. Antoni continued that because of poor balance, Plaintiff "should avoid environments with unprotected heights such as ladders and scaffolds," and recommend Plaintiff undergo a mental health evaluation. *Id*. On that same date, Plaintiff underwent a psychiatric evaluation by consultative psychologist Christine Ransom, Ph.D. ("Dr. Ransom"), who diagnosed major depressive disorder, currently stabilized on treatment, unspecified anxiety disorder, currently stabilized on treatment, history of alcohol dependence in remission since October 2020 with Plaintiff currently in treatment, and, based on Plaintiff's reported medical diagnosis, difficulty walking and standing. AR at 949-53.

On November 19, 2021, Plaintiff's medical records were reviewed by State agency medical consultants B. Stouter, M.D. ("Dr. Stouter"), and P. Roy-Petrick, PhD ("Dr. Roy-Petrick"), in connection with the SSA's review of Plaintiff's disability benefits application, AR at 104-09, 123-26. Dr. Stouter opined that because of Plaintiff's physical impairments, Plaintiff can occasionally lift and/or carry 20 lbs., frequently lift and/or carry 10 lbs., stand and/or walk for a total of two hours in an 8-hour workday, and sit for a total of about six hours in an 8-hour workday. AR at 106, 123. Dr. Stouter also assessed Plaintiff with postural limitations including that she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl, and Plaintiff needed to avoid even moderate exposure to such hazards as machinery and heights. *Id*. at 107-08, 123-24. Dr. Roy-Petrick's psychological assessment of Plaintiff determined Plaintiff has the non-severe mental impairments of depressive, bipolar, and related disorders, anxiety and obsessive-compulsive disorders, and somatic symptoms and related disorders, AR at 102, 119, which posed mild limitations to Plaintiff's ability to understand, remember, and apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage oneself. *Id*. at 102-03, 119-20. Plaintiff's symptoms included loss of sensation, malaise, weakness, fatigue, and limitations for social interaction limitations, and ability to adapt. *Id*. at 104, 121. On February 28, 2022, State Agency review physician G. Wang, M.D. ("Dr. Wang"), confirmed Dr. Stouter's findings. AR at 143-46, 161-64. On March 2, 2022, State Agency review psychologist L. Dekeon, Ph.D. ("Dr. Dekeon", confirmed Dr. Roy-Petrick's determination. AR at 138-42, 157-60.

## DISCUSSION

### 1. Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[8] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

[8] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of

1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

**2. Disability Determination**

The definition of "disabled" is the same for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Act as for SSI benefits under Title XVI of the Act. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months,

---

the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's RFC which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found that Plaintiff meets the insured status requirements for DIB through September 30, 2025, AR at 13, and has not engaged in substantial gainful activity ("SGA") since August 26, 2020, Plaintiff's alleged disability onset date ("DOD").[9] AR at 14. The ALJ found Plaintiff suffers from the severe impairments of a conversion disorder, and alcoholism, *id*., but that other medically determinable impairments including a lumbar spine impairment at L4-L5, bipolar disorder, anxiety and depression, did not significantly limit Plaintiff's physical or mental ability to do basic work activities and thus are not severe, *id*. at 14-15, and Plaintiff's alleged alcoholic neuropathy and memory issues are non-medically determinable impairments. *Id*. The ALJ further found that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 15. Despite her impairments, the ALJ found Plaintiff retains the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with additional limitations including that Plaintiff can occasionally climb, balance, kneel, crouch, and crawl, occasionally work around unprotected heights, perform simple routine tasks, and make simple work-related decisions. *Id*. at 15-17. Although Plaintiff is unable to perform past relevant work, AR at 17, the ALJ found that Plaintiff, based on her age, high school education, work experience, and RFC, could perform work existing in significant numbers in the national economy including as a document preparer, scale operator, and table worker. *Id*. at 17-18. The ALJ further found that evidence in the record established Plaintiff's

[9] The ALJ observed that Plaintiff worked after the alleged DOD, but that such work activity did not rise to the level of SGA. AR at 14.

history of alcohol abuse has been in remission since September 2020 and, thus, was not material to the RFC determination. AR at 18. Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since Plaintiff's alleged DOD of August 26, 2020, through the date of the ALJ's decision. *Id*. at 18-19.

**3. Analysis**

In support of her motion, Plaintiff argues the ALJ committed legal error by improperly substituting her non-medical opinion as a lay person for the opinion of a psychiatrist or psychologist regarding her mental limitations which at step 2 of the sequential analysis the ALJ determined were non-severe, Plaintiff's Memorandum at 10-19, and for the opinion of a medical doctor with regard to Plaintiff's physical limitations for which the ALJ failed to develop the record by failing to obtain records pertaining to the treatment Plaintiff received at Elderwood ("the Elderwood records"), *id*. at 19-28, and failing to include in the RFC determination that Plaintiff required the option to alternate between sitting and standing at will ("sit-stand option"). *Id*. at 28-37. In opposition to Plaintiff's Motion and in support of Defendant's Motion, Defendant argues the ALJ's RFC determination reasonably accommodated Plaintiff's mental impairments, Defendant's Memorandum at 6-12, and physical impairments. *Id*. at 12-17. In reply, Plaintiff repeats her argument that the ALJ erroneously determined Plaintiff's mental impairments were non-severe, Plaintiff's Reply at 3-6, and failed to obtain the Elderwood records regarding Plaintiff's conversion disorder, *id*. at 6-8, and failed to include a sit-stand option in Plaintiff's RFC determination. *Id*. at 8-12. There is no merit to Plaintiff's arguments.

As regard's Plaintiff's argument that the ALJ erred at step 2 of the sequential analysis by failing to consider Plaintiff's mental impairments to be severe impairments,

Plaintiff's Memorandum at 10-19, the Second Circuit considers such errors harmless provided the ALJ proceeds with the subsequent steps of the analysis during which the effects of the subject severe and non-severe impairments are clearly considered. *See Stanton v. Astrue*, 370 Fed.Appx. 231, 233 n. 1 (2d Cir. 2010) (noting the ALJ's decision included consideration of the combination of the plaintiff's severe and nonsevere impairments and the combined effects of all symptoms in formulating the RFC, thus rendering harmless any error by the ALJ in failing to consider the plaintiff's neuropathy a severe impairment); *Brenda D. v. Comm'r of Soc. Sec.*, 2021 WL 1856905, at * 4 (W.D.N.Y. May 10, 2021) (citing *Reices-Colon v. Astrue*, 523 Fed.Appx. 796, 798 (2d Cir. 2013) (because the ALJ specifically considered the plaintiff's anxiety and panic attacks during the subsequent steps of the sequential analysis, any error at step 2 in failing to find such impairments were non-severe was harmless)). Here, the ALJ the ALJ specifically stated that she considered Plaintiff's conversion disorder and alcoholism to be severe, Plaintiff's lumbar spine impairment at L4-L5 was non-severe, and that Plaintiff also has non-medically determinable impairments of alcoholic neuropathy and memory issues. AR at 14. The ALJ also stated that she considered all of Plaintiff's alleged symptoms attributed to those impairments Plaintiff claims, AR at 15-16 (referencing AR at 328 (Disability Report-Adult, completed in connection with Plaintiff's disability benefits applications). Significantly, Plaintiff's claimed impairments include alcoholism, short-term memory problems, alcohol neuropathy, depression, bipolar disorder, addiction disorder, anxiety, and seizures. AR at 328. Relevantly, "an ALJ is not required to discuss every piece of evidence submitted," and "failure to cite specific evidence does not indicate that such evidence was not considered." *Brault*, 683

F.3d at 448 (citation and quotation marks omitted). Accordingly, the record establishes the ALJ considered all of Plaintiff's alleged impairments – whether severe, non-severe, or not medically determinable – in combination as required. *Stanton v. Astrue*, 370 Fed.Appx. at 233 n. 1 (noting any error by the ALJ in failing to consider an impairment severe at step 2 was rendered harmless where the ALJ's decision included consideration of the combination of the plaintiff's severe and nonsevere impairments and the combined effects of all symptoms in formulating the RFC). There is thus no merit to Plaintiff's argument.

Plaintiff argues the ALJ erred by failing to obtain records pertaining to the treatment Plaintiff received at Elderwood ("the Elderwood records"), resulting in an impermissible gap in the record. Plaintiff's Memorandum at 25-28. In particular, at the administrative hearing, the ALJ agreed to issue a subpoena for the Elderwood records, AR at 55-56, 94, but Elderwood's response to the subpoena was a letter indicating there was not record that Plaintiff was ever employed there. AR at 311. Plaintiff argues because the ALJ did not follow up with a correction that medical – not employment – records were requested, the administrative record is incomplete and thus cannot support the Commissioner's determination that Plaintiff is not disabled. Plaintiff's Memorandum at 25-28. In opposition, Defendant argues that the response received from Elderwood that Plaintiff was never an employee at most establishes that it is unclear whether there is a gap in the record for which the ALJ was not required to account. Defendant's Memorandum at 14 ("While the ALJ must attempt to fill in any 'clear gaps' in the administrative record, 'where there are no obvious gaps . . . and where the ALJ already possesses a complete medical history,' the ALJ is under no

obligation to seek additional information." (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999))). In reply, Plaintiff argues the ALJ impermissibly failed to obtain the Elderwood records regarding Plaintiff's conversion disorder. Plaintiff's Reply at 6-8.

Here, a careful and thorough review of the administrative record establishes that although Plaintiff was, on September 21, 2020, discharged from Kenmore Mercy to Elderwood, she left Elderwood against medical advice several days before Plaintiff's case presentation, and returned home to drink. AR at 720, 1298. Although it is not clear from the record precisely when Plaintiff left Elderwood, that Plaintiff reported she left, against medical advice, "because she wanted to drink alcohol a couple of days before presentation," AR at 720, and went to ECMC's emergency department on September 27, 2020 seeking "detox from alcohol," AR at 725, and complaining that she was unable to ambulate unless she is drinking alcohol, AR at 726, establishes that Plaintiff was not at Elderwood for more than, at most, a few days and did not successfully participate in any therapy or complete any rehabilitation program at Elderwood. Accordingly, even if any medical records for Plaintiff's brief stay at Elderwood exist, they cannot be sufficiently substantial that the ALJ's failure to obtain them creates an obvious gap in the administrative record requires remand. As such, this argument is without merit.

Plaintiff also argues the ALJ, by failing to find any medical opinion persuasive, improperly substituted her own "common sense" or "lay opinion" for a medical opinion in formulating the RFC determination. Plaintiff's Memorandum at 10-19 (mental impairments), and at 19-28 (physical impairments). The ALJ was not required to formulate an RFC that mirrors any medical opinions in the record because the ALJ is

"entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.). To the contrary, the burden lies with the plaintiff, not the Commissioner, to provide evidence establishing the RFC. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry...."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Here, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC.

Relevantly, the ALJ is not required to obtain or rely on any medical opinion where there is no evidence establishing the Plaintiff is experiencing any symptoms from a claimed impairment. *See Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (ALJ not required to accept the plaintiff's claims or impairment that are based only on the claimant's subjective complaints). Further, in the instant case, as regards Plaintiff's physical impairments, the ALJ's formulation of an RFC limiting Plaintiff to sedentary work with some additional postural and environmental restrictions is consistent with Dr. Dantoni's opinion rendered after examining Plaintiff on a consultative basis, AR at 958, as well as the opinions of State agency medical consultants Dr. Stouter, AR at 104-09,

123-26, and Dr. Wang. AR at 143-46, 161-64. Consultative examiners and State agency medical consultants are deemed to be highly qualified physicians who are experts in Social Security disability evaluations and an ALJ is entitled to rely upon their opinions, which can also serve as substantial evidence. *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence); *Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1513a and 416.913a, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).

Further, insofar as the ALJ did not find Dr. Ransom's opinion persuasive, Dr. Ransom found Plaintiff had no limitations posed by her mental health impairments. AR at 952. That the ALJ rejected Dr. Random's opinion that Plaintiff's mental impairments did not limit Plaintiff's ability to work, AR at 949-53, in favor of the State Agency review psychologist Dr. Roy-Petrick who assessed Plaintiff with mild limitations in all four domains of functioning set forth as the "paragraph B criteria" for mental health impairments, AR at 102-03, the ALJ thus accepted the more limiting opinion regarding Plaintiff's mental health which, even if erroneous, was harmless. *See Ramsey v. Comm'r of Soc. Sec.*, 830 Fed.Appx. 37, 39 (2d Cir. 2020) (affirming the district court's decision upholding the ALJ's decision although "the ALJ occasionally deviated from the consultative examiners' recommendations to *decrease* [the plaintiff]'s RFC based on other evidence in the record, exemplified by the ALJ's determination that [the plaintiff] should not interact with the public. The ALJ committed no error by determining the scope of [the plaintiff]'s RFC because that is his responsibility." (citing 20 C.F.R. § 404.1527(d)(2) (explaining that the Commissioner has the "final responsibility" for

determining, *inter alia*, a claimant's RFC); *Ellen A. v. Saul*, 2021 WL 1087949, at *4 (W.D.N.Y. Mar. 22, 2021) (even if the ALJ errs by formulating an RFC that is technically unsupported by the record because it assesses greater limitations than contained within the medical opinions of record, such error is harmless); *Smith v. Comm'r of Soc. Sec.*, 2020 WL 4333340, at *3 n. 2 (W.D.N.Y. Jul. 28, 2020) (noting "Plaintiff also appears to take issue with how the ALJ evaluated the opinion of the non-examining state agency consultant, but precisely what fault Plaintiff finds is not clear. As far as the Court can tell, it appears that the ALJ found Plaintiff to be more limited than the state agency consultant."); *Wynn v. Comm'r of Soc. Sec.*, 342 F.Supp.3d 340, 347-48 (W.D.N.Y. 2018) (finding the ALJ properly assigned "little weight" to the opinions of consultative medical sources that "included fewer mental and physical work-related limitations" than the ALJ included in the RFC assessment). There is thus no merit to this argument.

Nor did the ALJ's RFC assessment fail to accommodate Plaintiff's mental impairments, especially Plaintiff's asserted poor memory. In particular, although Plaintiff maintains she has memory issues, there is evidence in the record establishing that Plaintiff reported doing work on the computer for her father's paving company. *See*, *e.g.*, AR at 894 (BestSelf progress note dated June 25, 2021, reporting that Plaintiff "has been back working with her date a little bit"); 898 (BestSelf progress note dated July 7, 2021 that "Client identified her family and employment as her main support for recovery"); AR at 906 (BestSelf progress note dated July 16, 2021, that Plaintiff reported she "continue[d] to work, and that going to work gets [Plaintiff] motivated and active."). That Plaintiff continues to work is evidence that Plaintiff's mental impairments do not prevent her from working. *See Lovell v. Colvin*, 137 F.Supp.3d 347, 354 (W.D.N.Y. 2015) (no remand

necessary where ALJ rejects Plaintiff's subjective complaints based on Plaintiff's own expressed desire to work).

Additionally, at counseling sessions at BestSelf between February 23, 2021 when Plaintiff, following her discharge from Terrace View, resumed mental health care with BestSelf, and November 17, 2021, the last dated progress note in the record, Plaintiff was repeatedly assessed as presenting with no significant issues regarding her mental status which included mood and affect, appearance and behavior, speech, thought content, cognition/process, and motor function that would reasonably bear on whether Plaintiff suffered from a severe memory impairment. AR at 796-939, 959-1080. Further, at the administrative hearing, Plaintiff testified that she plays board games and on the computer with her nine-year old daughter, AR at 77-78, and can follow a recipe. AR at 78. Accordingly, the ALJ's determination that Plaintiff's mental impairment's do not impact Plaintiff's ability to perform work-related functions is supported by substantial evidence in the record.

Plaintiff objects to the ALJ's failure to incorporate into the RFC determination a sit-stand option. Plaintiff's Memorandum at 29-33, Plaintiff's Reply at 8-12. In opposition, Defendant argues that because no treating source ever assessed Plaintiff with any limitation to sitting, the ALJ's determination that Plaintiff could perform only sedentary work which limits standing and walking to a total of two hours in an 8-hour workday, sufficiently accommodated Plaintiff's exertional limitations. Defendants' Memorandum at 15-16. Plaintiff's objection lacks merit

Initially, it is observed that although as of September 2020, Plaintiff claimed she was unable to walk, an impairment that was attributed to a conversion disorder, at an

annual physical on September 3, 2021, Plaintiff was "ambulatory at baseline," *i.e.*, able to walk on her own in her everyday state of health. AR at 1281. This is consistent with Plaintiff's statements at the administrative hearing that she was unable to walk and used a wheelchair while hospitalized at ECMC from September 27, 2020 until November 5, 2020, at which time she was discharged to Terrace View where she began to ambulate using a walker. AR at 83-84. Plaintiff used the walker for about six months after which she was able to ambulate with a cane for approximately six more months. *Id*. Plaintiff denies having any physical therapy or occupational therapy since being discharged from Terrace View on December 18, 2020. AR at 70-71. As of the hearing on February 10, 2023, Plaintiff remained able to walk without an assistive device. AR at 83.

The ALJ formulated an RFC that limited Plaintiff to a less than full range of sedentary work based on several postural and mental limitations. AR at 15. Relevantly,

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) and 416.967(a).

"The vocational term 'occasionally' means occurring from very little up to one third of the workday." *Edward M. v. Comm'r of Soc. Sec.*, 2026 WL 1613959, at *7 (W.D.N.Y. June 5, 2026) (citing SSR 83-10,[10] 1983 WL 31251, at *5 (Jan. 1, 1983)). Further, "a marked limitation in walking is not inconsistent with sedentary work." *Rudolph M. v. Comm'r of*

[10] "SSR" is an acronym for "Social Security Ruling." Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

*Soc. Sec.*, 2021 WL 9639934, at *5 (W.D.N.Y. Feb. 1, 2021) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (sedentary work involves up to two hours of standing or walking and six hours of sitting in an eight hour work day); *DeRosia v. Colvin*, 2017 WL 4075622, at *20-21 (W.D.N.Y. Sept. 14, 2017) (moderate to marked limitations for prolonged standing and walking was consistent with the conclusion that the claimant could perform sedentary work); *Love-Dennis v. Commissioner of Social Security*, 2020 WL 4784584, at 5 (W.D.N.Y. Aug. 18, 2020) (moderate limitations in standing and walking supports determination that claimant was limited to sedentary work). It is significant that only Plaintiff imposed a five-minute limitation to standing and walking by testifying as much at the administrative hearing. AR at 79-80. Further, the administrative record is silent as to any limitation to Plaintiff's ability to sit. Nor has any treatment provider commented that Plaintiff must be able to sit and stand at will. Accordingly, the ALJ's limiting Plaintiff to only two hours total standing and walking is well-within the requirements for sedentary work and is consistent with Dr. Dantoni's opinion that Plaintiff "has moderate to marked limitations for prolonged standing, [and] prolonged walking . . . ." AR at 958.

To summarize, here, there are no issues of fact which, if decided in the Plaintiff's favor, would compel a reasonable factfinder to reach a determination contrary to the ALJ's decision. *Bonet ex rel. T.B.*, 523 Fed.Appx. at 58-59. Under this "very deferential standard of review," *Brault*, 683 F.3d at 448, the ALJ's decision that Plaintiff was not disabled between the date of her disability benefits application and the date of the ALJ's decision is supported by substantial evidence in the record, and no remand for consideration of any additional records is warranted.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 13) is DENIED; Defendant's Motion (Dkt. 19) is GRANTED. The Clerk of Court is DIRECTED to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: September 1, 2026
Buffalo, New York